

# COPY

## IN THE CHANCERY COURT FOR DAVIDSON COUNTY TENNESSEE
### 20th JUDICIAL DISTRICT AT NASHVILLE

BELLE MEADE TITLE & ESCROW    )
CORPORATION, a Tennessee corporation,  )
        )
    Plaintiff,    )
        )
v.    )  Case No. *17-368-III*
        )
FIFTH THIRD BANK, an Ohio corporation,  )
and REGIONS BANK an Alabama  )
corporation,  )
        )
    Defendants.    )

## COMPLAINT

COMES NOW the Plaintiff, Belle Meade Title & Escrow Corporation (Sometimes referred to as "BMT&E"), by and through counsel, and sets forth the following claims against the Defendant, Fifth Third Bank (Sometimes referred to as "Fifth Third Bank") and Regions Bank ("Sometime referred to as Regions Bank'). For cause, BMT&E would show the Court as follows:

### PARTIES

1. At all times material herein, BMT&E was and still is a title company. BMT&E is incorporated in Tennessee, as a domestic corporation, with its principal place of business at 109 Kenner Avenue, Nashville, Davidson County, Tennessee.

2. BMT&E provides real estate closing services to clients from all over the United States. BMT&E has had a long-term banking relationship with Fifth Third Bank and has maintained several accounts with Fifth Third Bank, including its business operating account and an escrow account.

3. At all times material herein, Fifth Third Bank was and still is a large banking institution, incorporated in Ohio as a for profit corporation with its principal address being 38 Fountain Square Plaza, Cincinnati, Ohio 45263-001. Fifth Third Bank's registered agent is Corporate Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312. Fifth Third Bank frequently holds money in escrow accounts for title companies. Fifth Third Bank is aware that the deposits in escrow accounts are received in trust for the benefit of clients.

4. At all times material herein, Fifth Third Bank employed Rafeek Ghattas as a the Branch Manager of Fifth Third Banks' branch located in Nashville, Tennessee on Harding Road, commonly known as the Belle Meade Branch. At all times material herein, it was represented that Fifth Third Bank was dedicated to serving the financial needs of legal professionals and title companies.

5. At all times material herein Fifth Third Bank was and still is regulated by the Federal Reserve Board of Governors, pursuant to 12 U.S.C. § 248, and the Office of the Comptroller of Currency, a division of the United States Treasury, pursuant to 12 U.S.C. § 93a.

6. At all times material herein, Regions Bank was and still is a large banking institution, incorporated in Alabama as a for profit corporation with its principal address being 1900 5th Avenue North, Birmingham, Alabama 35203-2610. Fifth Third Bank's registered agent is Corporate Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

7. At all times material herein Regions Bank was and still is regulated by the Federal Reserve Board of Governors, pursuant to 12 U.S.C. § 248, and the Office of the Comptroller of Currency, a division of the United States Treasury, pursuant to 12 U.S.C. § 93a.

8. The true names and capacities of defendants DOES ONE through TEN are unknown to BMT&E, and BMT&E will seek leave of court to amend this Complaint to allege such names and capacities as soon as they are ascertained.

## NATURE OF ACTION

9. This action arises as a result of a number of acts and omissions by Fifth Third Bank and Regions Bank in connection with a wire transfer of clients' funds in the amount of $130,000,00 to a Regions Bank located in Atlanta, Georgia from BMT&E's escrow account, which caused a loss to BMT&E in excess of $116,000.00.

10. In the ordinary course of business after deposited funds have cleared, BMT&E transfers from its escrow account to its operating account its closing fees and costs for its reimbursement, pays any outstanding charges authorized by the client, and remits the client's portion of the funds as instructed by the client. At any one time, BMT&E may have a large sum of money in its escrow account, which is not immediately available to disburse because BMT&E is waiting for the deposited funds to clear its escrow account.

11. At all times material herein, BMT&E was working with, and receiving specialized, personal advice from, representatives employed by Fifth Third Bank.

12. At all times material herein, Rafeek Ghattas maintained a personal banking relationship with BMT&E and acted within the scope of his employment at Fifth Third Bank.

13. Fifth Third Bank held out to BMT&E that Rafeek Ghattas was BMT&E's customer service representatives; that he was responsible for answering BMT&E's banking questions and concerns; and that he would provide banking and financial advice that BMT&E could rely upon. He was held out by Fifth Third Bank to BMT&E as being knowledgeable of the banking needs of title companies and wire transfers from escrow accounts in large amounts to banks in the United States.

14. At all times material herein, Rafeek Ghattas had apparent, implied and actual authority to make the promises and representations alleged herein.

15. Fifth Third Bank is vicariously responsible for the acts and omissions of its officers and employees alleged herein, under the doctrine of *respondeat superior* and under federal banking regulations.

16. Fifth Third Bank and its customer service representatives, at all times material herein, assumed an undertaking of special duties to BMT&E and had information greater than BMT&E of many material matters. These matters included check clearing, wire transfers, validity of available balance in account, whether payment is final, financial fraud schemes and fraud prevention.

17. At all times material herein, Fifth Third Bank was aware of the circumstances of BMT&E's Escrow account and BMT&E's legal responsibility to safeguard funds for its clients. Fifth Third Bank was aware of BMT&E's professional and business practices described herein.

18. At all times material herein, BMT&E, its officers and employees believed that they were receiving honest, independent, good-faith advice from Fifth Third Bank.

19. At all times material herein, BMT&E, its officers and employees, did not believe that they were receiving injurious advice to accept and deposit into their BMT&E escrow account a fraudulent check and make an outgoing wire transfer for federal law enforcement purposes.

20. As a result of Fifth Third Bank's officers' and employees' materially false, fictitious, fraudulent statements, representations and omissions, as set forth with particularity below, and their willful, or negligent, illegal misapplication of clients' funds held in BMT&E's escrow account in the custody and care of Fifth Third Bank, BMT&E has suffered substantial losses, as set forth herein.

21.  BMT&E brings this action against Fifth Third Bank for negligent misrepresentation, fraudulent misrepresentation, negligent hiring, training and supervision of its employees, promissory estoppel, undertaking of special duty, breach of fiduciary duty, breach of customary practices of financial institutions, and violations of Tennessee. Code § 47-4-202 and Tennessee. Code § 47-4A-202.

## JURISDICTION AND VENUE

22.  Venue is proper in this Court because the actions and breaches herein described primarily occurred in Davidson County, Tennessee and the corporate Defendants maintain offices in Davidson County, Tennessee.

23.  The action involves business claims between or among two or more businesses entities as to their business or business activities relating to contacts, transactions or relationships between or among them.

24.  This Court has subject matter jurisdiction over all causes of actions asserted in the Complaint and has personal jurisdiction over the Defendants.

## FACTS

25.  In April of 2016 BMT&E received an e-mail from a real estate agent Greg Seaton on behalf of a person named An Chang Al.  The e-mail claimed that An Chang Al wanted to purchase real estate located in Nashville, Davidson County, Tennessee and requested BMT&E's help in closing the real estate transaction.

26.  Several days later, on April 12, 2016, BMT&E received a check purportedly from the Royal Bank of Canada, in the amount of $399,496.49 dated April 8, 2016. The check appeared to have been received for the purpose of purchasing the real estate in Nashville, Tennessee.   Attached hereto as Exhibit "A" is a copy of the purported Royal Bank of Canada check.

27. On that day, April 12, 2016, BMT&E caused the purported check to be included in that day's deposit into BMT&E's escrow account at Fifth Third Bank's Belle Meade Branch.

28. The purported check contained a routing number of 0092024, an account number of 095591003, and was allegedly payable from Royal Bank of Canada.

29. BMT&E through its employees advised Rafeek Ghattas and told him that BMT&E's wire transfer to the client was contingent on the funds in the purported check clearing at Royal Bank of Canada.

30. No Fifth Third Bank employee communicated to anyone at BMT&E that it was foreseeable that a serious problem would occur if funds were not available to cover the outgoing wire transfer from BMT&E's escrow account.

31. Fifth Third Bank, through its authorized agent(s), intended that BMT&E rely on the statements that Fifth Third Bank would watch the account to be assured this check has cleared the account, and knew or should have known, based on the inquiries made by BMT&E, that BMT&E was depending on Fifth Third Bank to watch the escrow account and advise BMT&E as to whether the check was "good," and when the purported check had cleared.

32. On or about April 21, 2016, Fifth Third Bank wrongfully proceeded to wire-transfer, and willfully misapply BMT&E's escrow account funds; even though Fifth Third Bank knew that the counterfeit check deposited into its escrow account had not cleared the escrow account. Fifth Third Bank relied upon the number of days that had elapsed from the day of deposit, upon the available balance in BMT&E's escrow account, and upon BMT&E's credit worthiness, instead of ensuring that the purported check had actually cleared and that the outgoing funds from the purported check were in BMT&E's escrow account.

33. On May 3, 2016, Fifth Third Bank received notice of problems with the purported check. On May 16, 2016 the Royal Bank of Canada dishonored and returned the counterfeit check. BMT&E was not, however, notified by Fifth Third Bank that the counterfeit check had not cleared and was returned by the Royal Bank of Canada until notified by Regions Bank.

34. At all times material herein, prior to learning that the purported check was counterfeit, BMT&E, its officers and employees believed that the check (Exhibit A) was genuine.

35. At the time of its wire transfer, Fifth Third Bank knew that BMT&E did not wish to wire-transfer funds from its escrow account that were held in escrow by BMT&E from the settlements of its other clients' cases, as BMT&E had a duty to safeguard such funds for the benefit of those other clients.

36. Fifth Third Bank failed to properly debit BMT&Es escrow account after the purported check from the Royal Bank of Canada was returned to show that the credit for the $399,498.49 deposit was rescinded and charged back to BMT&E. Had Fifth Third Bank properly debited BMT&E's escrow account, anyone watching the escrow account would be aware that the $399,498.49 credit given by Fifth Third Bank to BMT&E's escrow account should have been rescinded and charged back to BMT&E.

37. At all times material herein, Fifth Third Bank officers and employees willfully or negligently misapplied its bank's escrow account funds by proceeding to wire-transfer funds from the escrow account, despite actual or imputed knowledge of the invalidity of the deposited counterfeit check (Exhibit A).

38. Fifth Third Bank did not issue the wire transfer in good faith, as required by the Tennessee Uniform Commercial Code (UCC), Tennessee Code. § 47-4-202, and Tennessee.

Code. § 47-4A-202, for several reasons. First, Fifth Third Bank did not timely notify BMT&E of the dishonored and returned check. Second, Fifth Third Bank did not issue the wire transfer in good faith because it failed to notice numerous red flags surrounding the circumstances of the transaction and the appearance of the purported check.

39. On April 21, 2016, despite Fifth Third Bank's knowledge that the purported check, was fraudulent, officers and employees of Fifth Third Bank approved and executed the outgoing wire transfer from BMT&E's escrow account to Regions Bank in Atlanta, Georgia.

40. At the time the wire transfer arrived at a Regions Bank in Atlanta, Georgia on April 21, 2016, the outgoing funds were promptly withdrawn. Upon information and belief, all or a portion of the wire-transferred funds have been irretrievably lost except for $14,000.00.

41. Fifth Third Bank failed to immediately notify BMT&E by telephone, e-mail, or any other feasible communication method to promptly inform BMT&E that the check had been dishonored, in order to comply with its responsibilities as set forth herein.

42. Rafeek Ghattas agreed that he would not issue the wire transfer until a purported check, drawn on Royal Bank of Canada with the maker being "Olympus" in the amount of $399,498.49 was deposited into BMT&E's escrow account and had cleared.

43. BMT&E, on multiple occasions, prior to the wire transfer, notified Fifth Third Bank that its outgoing wire transfer was contingent on the $399,498.49 check (Exhibit A), clearing BMT&E's escrow account.

44. Prior to the wire transfer, Fifth Third Bank falsely represented to BMT&E that the fraudulent check (Exhibit A), had cleared and issued the outgoing wire transfer, even though Fifth Third Bank and their employee(s) working with BMT&E knew, or should have known, that the check was fraudulent.

## COUNT I
## NEGLIGENCE

45. Paragraphs 1 through 44 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

46. BMT&E states and alleges that Fifth Third Bank's acts and omissions were negligent and Plaintiff is entitled to damages from Fifth Third Bank for its negligence in making the wire transfer of $130,000.00 of clients' funds from BMT&E's Escrow account on April 21, 2016, from Tennessee to Regions Bank in Atlanta.

47. At all times material herein, Fifth Third Bank and Regions Bank negligently ignored warnings that counterfeit checks have been increasingly used to commit fraud. When a foreign check is used in in a counterfeit check scheme, a title company may improperly release the funds immediately after a one or two-day hold, falsely believing the check has cleared. BMT&E waited a substantially greater amount of time and verified with Fifth Third Bank that the check had cleared the escrow account and the funds could be wire-transferred.

48. At all times material herein, Fifth Third Bank customer service representatives, were negligently and inadequately trained and supervised in that they were apparently unaware of, unconcerned with, or willfully blind to the fact that counterfeit checks may be used in a fraud described herein.

49. At all times material herein, customer service representatives of Fifth Third Bank and Regions Bank were negligently and inadequately trained to know the red flags of cashier's check fraud to avoid scams that could affect their customers, and to comply with federal law. This is especially true when the bank has escrow accounts containing customers' clients' funds.

50. At all times material herein, Fifth Third Bank's customer service representatives failed to recognize and promptly and properly act upon obvious red flags, well known to financial institutions.

51. As part of their duty to monitor the validity of the purported check, Fifth Third Bank's customer service representatives negligently failed to make reasonable use of the "Financial Institutions Hotline," 1-866-556-3974. This number was published by FinCEN on September 28, 2001, procedures, policies, account balances, availability of funds, check fraud and wire transfers.

52. Fifth Third Bank negligently causes customers; including BMT&E, to rely on its customer service representatives and trust them as fiduciaries that act in their customers' best interests.

53. Although Fifth Third Bank negligently led BMT&E to believe it was watching the check, it did not inform BMT&E that the purported check (Exhibit "A"), was counterfeit after wire-transferring funds to criminal conspirators. When there were red flags, Fifth Third Bank should have verified the validity of a purported check before funds were wire-transferred **to** Regions Bank in Atlanta, Georgia.

54. Fifth Third Bank negligently failed to advise BMT&E that it had not verified whether the purported official check (Exhibit A), was counterfeit, and negligently failed to advise BMT&E to verify that the purported check was not counterfeit. Further, Fifth Third Bank misled BMT&E into believing the purported official check (Exhibit A), was not counterfeit.

55. At all times material herein, Fifth Third Bank negligently placed a greater value on efficiency in releasing funds and the use of computers for efficiency and profitability, instead of due diligence by responsible officers and employees.

56. Fifth Third Bank was negligent in sending the wire transfer on April 21, 2016, without verifying whether the purported official check was "good" and had cleared. Fifth Third Bank and its agents promised to watch the escrow account.

57. As a direct and proximate result of Fifth Third Bank's negligence, BMT&E has suffered damages as set forth herein.

## COUNT II
## NEGLIGENT MISREPRESENTATION

58. Paragraphs 1 through 57 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

59. Fifth Third Bank owed a duty of reasonable care in conveying information to BMT&E regarding the purported check and wire transfer.

60. Fifth Third Bank, through its authorized agent intended that BMT&E rely on the statements that Fifth Third Bank would watch the account to be assured this check has cleared the account.

61. Fifth Third Bank was negligent in advising BMT&E on April 21, 2016 that everything was ready for the wire transfer to be sent, without checking to determine whether the purported official check was "good" and had cleared, when Fifth Third Bank knew that the wire transfer was contingent on the purported check clearing and being "good."

62. BMT&E relied on Fifth Third Bank's representation that everything was ready for the wire transfer to be sent, and authorized the transfer on April 21, 2016 on the basis of that representation. In light of Fifth Third Bank's previous representations that it would watch the account to be assured this check has cleared the account, and its agreement to advise BMT&E as to when the wire can be processed, and in light of BMT&E having specifically advised Fifth Third Bank that the wire transfer was contingent on the check being "good" and on the purported

check clearing, BMT&E understood the statement that the check had cleared, to mean that the purported check was "good" and the wire transfer could be sent.

63. When Fifth Third Bank made the representation that the check had cleared, Fifth Third Bank knew and should have known that the purported check had not cleared and was counterfeit.

64. When it made the representation that the wire transfer could be sent, Fifth Third Bank knew, or should have known, that no one at Fifth Third Bank had checked to determine whether the purported check was "good" and whether it had cleared.

65. At all times material herein, when it made its representation to BMT&E, Fifth Third Bank knew or should have known that the purported check was counterfeit. BMT&E did not receive notice that the purported check had been dishonored until it received Regions Bank's notice of the dishonor.

66. As a direct and proximate result of Fifth Third Bank's negligent misrepresentations, BMT&E has suffered damages as set forth herein.

## COUNT III
## FRAUDULENT MISREPRESENTATION AND
## SUPRESSION OF MATERIAL FACTS

67. Paragraphs 1 through 66 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

68. Fifth Third Bank intentionally, willfully and recklessly misrepresented to BMT&E, and suppressed material facts from BMT&E. Specifically, Fifth Third Bank represented to BMT&E that the purported check (Exhibit A), had cleared and that the funds were available to be wired.

69. At the time Fifth Third Bank made false representations about the purported check, (Exhibit A), Fifth Third Bank knew that it was counterfeit.

70. Fifth Third Bank fraudulently made these misrepresentations and suppressions with knowledge that the representations were false or with reckless disregard for whether they were true or not.

71. BMT&E relied and acted on Fifth Third Bank's fraudulent representation about the purported check, (Exhibit A).

72. As a direct and proximate result of Fifth Third Bank's fraudulent misrepresentations and suppressions, BMT&E has suffered damages as set forth herein.

**COUNT IV**
**NEGLIGENT HIRING, TRAINING,**
**MONITORING AND SUPERVISION**

73. Paragraphs 1 through 72 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

74. At all times material herein, the Defendants, Fifth Third Bank and Regions Bank negligently and/or intentionally hired and/or contracted with Fifth Third Bank and Regions Bank officers and employees by failing to ensure that they were qualified, trained, supervised and/or otherwise fit to carry out the duties for which they were charged.

75. At all times material herein, Defendants, Fifth Third Bank and Regions Bank, negligently and/or intentionally disregarded the consequences of such failure to hire, train, supervise and/or contract with qualified employees and staff.

76. At all times material herein, Defendants, Fifth Third Bank and Regions Bank, negligently, willfully and/or intentionally failed to supervise and train their officers and employees who were involved in the transaction that is subject of this Complaint.

77. At all times material herein, Defendants, Fifth Third Bank and Region Bank, served as the employer and/or master of their employees who negligently and/or intentionally subjected BTGM to unlawful conduct.

78. At all times material herein, Defendants, Fifth Third Bank and Regions Bank, negligently supervised Fifth Third Bank employees who were involved in the transaction that is subject of this Complaint and failed to prevent the unlawful conduct as alleged above by its action and inaction.

79. At all times material herein, Defendants, Fifth Third Bank and Regions Bank, should have known about the improper conduct of Fifth Third Bank and Regions Bank officers and employees, or should have known that such conduct was improper, and failed to take adequate steps to remedy the situation.

80. As a direct and proximate result of the negligent hiring, training, monitoring and supervising its officers and employees by Defendants, Fifth Third Bank and Region Bank, BMT&E has suffered damages as set forth herein.

## COUNT V
## PROMISSORY ESTOPPEL

81. Paragraphs 1 through 81 are hereby re-alleged in their entirety, as if they were specifically set forth herein

82. BMT&E has suffered damages as set forth herein of $116,000.00, and Fifth Third Bank should restore to BMT&E's escrow account the said sum.

## COUNT VI
## UNDERTAKING OF SPECIAL DUTY

83. Paragraphs 1 through 82 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

84. At all times material herein, Fifth Third Bank assumed a special responsibility and duty to BMT&E, including the duties to watch the account to be assured this check has cleared the account and promises to do so.

85. At all times material herein, Fifth Third Bank recognized or should have recognized that its undertaking was necessary to protect BMT&E's property, specifically, the funds in BMT&E's escrow account.

86. At all times material herein, Fifth Third Bank breached its special responsibility and duty through its failure to exercise reasonable care in performance of its undertaking, specifically, by failing to check whether the purported check had cleared. Fifth Third Bank's failure to exercise reasonable care increased the risk of harm to BMT&E.

87. BMT&E relied on Fifth Third Bank to carry out its undertaking with reasonable care and sustained harm as a result of its reliance on Fifth Third Bank's undertaking.

88. As a direct and proximate result of Fifth Third Bank's breach of its special duty, BMT&E has suffered damages as set forth herein.

## COUNT VII
## BREACH OF FIDUCIARY DUTY

89. Paragraphs 1 through 88 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

90. On April 21, 2016, the day after the purported official check was deposited into BMT&E's escrow account at Fifth Third Bank, BMT&E made known to Fifth Third Bank that it was relying on the bank to counsel and inform BMT&E as to when the outgoing funds would be available from the purported check so that the wire transfer could be sent.

91. 12 C.F.R. § 229.2 Definitions. Federal Reserve Regulation C.C. provides:

"Available for withdrawal with respect to funds deposited means available for all uses generally permitted to the customer for actually and finally collected funds[emphasis

added] under the bank's account agreement or policies, such as for payment of checks drawn on the account, certification of checks drawn on the account, electronic payments, withdrawals by cash, and transfers between accounts."

92. A reasonable understanding of the communication between BMT&E and Fifth Third Bank's employees was that the wire transfer would be made from actually and finally collected funds, and not the understanding that the status of the funds, as represented by the purported check deposited, could change in the future.

93. At no time did Fifth Third Bank, its officers or employees, describe the credit given to BMT&E by the deposit as a provisional credit, as provided for in Title 4 of the UCC. Fifth Third Bank, its officers and employees never explained that it intended to reverse the credit on the deposit, in the event the check failed to clear the drawee bank and deny liability.

94. The policy, practice and procedure by Fifth Third Bank regarding the final settlement of a check deposited, is unreasonable and makes it impossible for any customer to ever know when funds represented by a check are actually available for use and are finally cleared and settled.

95. As a result of the above-referenced communications made by BMT&E, and Fifth Third Bank's promises to watch the account to be assured this check has cleared the account, Fifth Third Bank knew or had reason to know that its customer, BMT&E, was placing its trust and confidence in Fifth Third Bank and was relying on it so to counsel and inform BMT&E.

96. At all times material herein, Fifth Third Bank's knowledge that BMT&E was placing its trust and confidence in it and was relying on it to counsel and inform BMT&E, constituted special circumstances giving rise to a fiduciary duty to BMT&E on the part of Fifth Third Bank.

97. At all times material herein, as a fiduciary, Fifth Third Bank owed BMT&E a duty of scrupulous good faith, Escrow, confidence, candor, undivided loyalty and an obligation to act in the best interests of BMT&E.

98. At all times material herein, Fifth Third Bank breached its fiduciary duty in a number of instances, as set forth herein. A breach occurred by Fifth Third Bank's failure to fulfill its promises to watch the account to be assured this check has cleared the account. Furthermore, it breached its duty by failing to exercise reasonable care in performance of its undertaking to watch the escrow account and make sure the purported check was "good" and had cleared before sending the wire transfer, and it breached its fiduciary duty by failing to advise BMT&E that its policy is to hold BMT&E responsible if the check deposited is not "good."

99. As a direct and proximate result of Fifth Third Bank's breach of fiduciary duty, BMT&E has suffered damages as set forth herein.

## COUNT VIII
## BREACH OF CUSTOMARY PRACTICES OF FINANCIAL INSTITUTIONS

100. Paragraphs 1 through 99 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

101. At all times material herein, Defendants, Fifth Third Bank and Regions Bank, knew or should have known BMT&E was placing its trust and confidence in the bank and was relying on the bank to follow customary practices of financial institutions regarding fraud detection and consumer protection in connection with check deposits and wire-transfer procedures.

102. At all times material herein, Defendants, Fifth Third Bank and Regions Bank, failed to follow the customary practices of financial institutions associated with the Patriot Act and the Bank Secrecy Act. Defendants, Fifth Third Bank and Regions Bank, owed BMT&E a duty of scrupulous good faith, trust, confidence, candor, undivided loyalty and an obligation to act in the best interests of BMT&E under the Patriot Act, Anti-Money Laundering ACT (AML) and Bank Secrecy Act with regard to its undertakings regarding the wire transfers.

103. At all times material herein, Defendants, Fifth Third Bank and Regions Bank, failed to follow customary practices of financial institutions by wire-transferring funds from BMT&E's escrow account that were proceeds of a crime. Fifth Third Bank's wire transfer was in violation of anti-money laundering law, the Patriot Act, Regulation CC, Bank 21 Act, 18 U.S.C. 656 and 1343, and other federal regulations.

104. At all times material herein, Defendants, Fifth Third Bank and Regions Bank, breached its duty through its failure to adhere to the customary practices of financial institutions to the detriment of BMT&E.

105. As a direct and proximate result of Fifth Third Bank's breach of customary practices of financial institutions, BMT&E has suffered damages as set forth herein.

## COUNT IX
## VIOLATION OF TENNESSEE. CODE. § 47-4-202
### (FAILURE TO SEND TIMELY
### NOTICE OF DISHONOR)

106. Paragraphs 1 through 105 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

107. Upon information and belief, and based on the fact that BMT&E did not receive notice that the check had been dishonored until it received notice from Regions Bank, Fifth Third Bank failed to send timely notice to BMT&E of the dishonor of the purported check by the payor bank, Royal Bank of Canada, within a reasonable time, as required by Tenn. Code § 47-.4-202.

108. As a direct and proximate result of Fifth Third Bank's violation of Tenn. Code. 47-4-202, Fifth Third Bank is liable to BMT&E for its damages as set forth herein.

## COUNT X
## VIOLATION OF TENNESSEE. CODE § 47-4A-202
## (FAILURE TO ACCEPT PAYMENT ORDERS IN GOOD FAITH)

109. Paragraphs 1 through 108 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

110. At all times material herein, Fifth Third Bank knew that BMT&E's wire transfer instructions were contingent on the purported check clearing, and, Fifth Third Bank, acknowledging this requirement, agreed to monitor BMT&E's escrow account for this specific check to clear.

111. On April 21, 2016, Fifth Third Bank solicited erroneous wire-transfer instructions from BMT&E by purporting to the firm that the check in question had cleared.

112. The wire transfer referenced above was not effective as payment orders by BMT&E under Tenn. Code. § 47-4A-202, as Fifth Third Bank did not accept the payment orders issued on April 21, 2016 in good faith, as defined in Tenn. Code. § 47-1-201, or in compliance with BMT&E's instruction restricting when said order should be complete.

113. Fifth Third Bank cannot prove that it acted in good faith in accepting BMT&E's payment orders under Tenn. Code § 47-4-202.

114. As a direct and proximate result of Fifth Third Bank's violation of Tenn. Code. § 47-4A-202, Fifth Third Bank is liable to BMT&E for its damages as set forth herein.

## CONSEQUENTIAL DAMAGES

115. Paragraphs 1 through 114 are hereby re-alleged in their entirety, as if they were specifically set forth herein.

116. As a direct and proximate result of acts and omissions alleged against Fifth Third Bank and Regions Bank herein, BMT&E has suffered consequential and incidental damages in excess of $116,000.00 against the Defendants, jointly and severally, to cover deficiencies in BMT&E's Escrow account, together with interest, costs, disbursements and attorneys' fees.

WHEREFORE, Plaintiff prays for the following relief:

a. A judgment against Defendants, specifically restoring the wrongfully wire-transferred funds to BMT&E.

b. A judgment against Fifth Third Bank and Regions Bank, in excess of $116,000.00 for damages, including loss of the use of BMT&E funds from the time of the illegal wire transfer to the time that the funds are restored to BMT&E, expenses for legal and factual investigation, attorneys' fees, interest, costs and disbursements, and such other equitable relief as determined by this Court.

c. BMT&E reserves the right to amend the Complaint, and be awarded punitive damages.

d. That the Court award the Plaintiff any available pre and post judgment interest.

e. That the Plaintiff have any additional relief to which it is entitled under the facts of this case.

Respectfully submitted,

Donald J. Serkin, (No. 003738)
Attorney for Plaintiff,
Belle Meade Title & Escrow Corporation
102 Woodmont Blvd., Suite 200
Nashville, TN 37205
(615) 345-0244
djslaw@woodmontsuites.com

**OLYMPUS** 3500 CORPORATE PARKWAY
P.O. BOX 610
CENTER VALLEY, PA 18034-0610

Royal Bank of Canada
FOR HOLD CLIENT SRV CTR
315 FRONT ST W 3RD FLR
TORONTO, ONTARIO M5V 3A4

00902021

DATE 2 0 1 6 0 4 0 8
Y Y Y Y M M D D

1247440

PAY Three Hundred Ninety-Nine Thousand Four Hundred Ninety-Eight Dollars and 49 Cents

$*******399,498.49

U.S. Dollars

TO THE
ORDER OF
BELLE MEADE TITLE & ESCROW CROP
109 KENNER AVENUE
SUITE 201
NASHVILLE, TN 37205
USA

AUTHORIZED SIGNATORY

AUTHORIZED SIGNATORY

⑈00902024⑈ ⑈09591⑈0031⑈ 104⑈582⑈2⑈

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>*17-368-III* |
|---|---|---|

| PLAINTIFF<br>Belle Meade Title & Escrow Corporation | DEFENDANTS<br>Fifth Third Bank, An Ohio Corporation<br>and Regions Bank, An Alabama Corporation |
|---|---|

TO:  (NAME AND ADDRESS OF DEFENDANT)

**Fifth Third Bank, An Ohio Corporation**
**SERVE REGISTERED AGENT:**
Corporate Service Company
2908 Poston Avenue
Nashville, Tennessee 37203-1312

List each defendant on a separate summons.

**Method of Service:**
G   Certified Mail
G   Davidson Co. Sheriff
G  * Comm., of Insurance
G  * Secretary of State
G  * Out of County Sheriff
G   Private Process Server
G   Other
    *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number)<br><br>Donald J. Serkin, Esq.<br>102 Woodmont Blvd., Suite 200<br>Nashville, Tennessee 37205<br>(615) 345-0244 | FILED, ISSUED & ATTESTED<br><br>APR 1 7 2017<br><br>**MARIA M. SALAS, Clerk and Master**<br>By:                              1 Public Square<br>                                      Suite 308<br>                                      Nashville, TN 37201<br><br>**Deputy Clerk & Master** |
|---|---|

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED<br><br><br>**Sheriff** |
|---|---|

***Submit one original plus one copy for each defendant to be served.**
ADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) *Corporate Service Company*

☒ Served _____  ☐ Not Found _____

☐ Not Served _____  ☐ Other _____

DATE OF RETURN:

4/24/17

By: _____

Sheriff/or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to the defendant _____. On the _____ day of _____, 20___, I received the return receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| Sworn to and subscribed before me on this _____ day of _____ _____, 20___.<br>Signature of _____ Notary Public or _____ Deputy Clerk<br><br>My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to: Clerk & Master
1 Public Square
Suite 308
Nashville TN 37201

Please state file number on list.

RECEIVED

APR 26 2017

Dav. Co. Chancery Court

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| | |
|---|---|
| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master<br><br>By: _____<br><br>                              D.C. & M. |

# ORIGINAL

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>19-368-III |
|---|---|---|

| PLAINTIFF<br>Belle Meade Title & Escrow Corporation | DEFENDANTS<br>Fifth Third Bank, An Ohio Corporation<br>and Regions Bank, An Alabama Corporation |
|---|---|

**TO:  (NAME AND ADDRESS OF DEFENDANT)**

**Regions Bank, An Alabama Corporation**
**SERVE REGISTERED AGENT:**
Corporate Service Company
2908 Poston Avenue
Nashville, Tennessee 37203-1312

List each defendant on a separate summons.

**Method of Service:**
G  Certified Mail
G  Davidson Co. Sheriff
G * Comm., of Insurance
G * Secretary of State
G * Out of County Sheriff
G  Private Process Server
G  Other
*Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number)<br><br>Donald J. Serkin, Esq.<br>102 Woodmont Blvd., Suite 200<br>Nashville, Tennessee 37205<br>(615) 345-0244 | **FILED, ISSUED & ATTESTED**<br><br>APR 17 2017<br><br>**MARIA M. SALAS, Clerk and Master**<br>**By:**                1 Public Square<br>Suite 308<br>Nashville, TN 37201<br><br>Deputy Clerk & Master |
|---|---|

## NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| **TO THE SHERIFF:** | **DATE RECEIVED**<br><br><br>**Sheriff** |
|---|---|

***Submit one original plus one copy for each defendant to be served.
ADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _Corporate Service Company_

☒ Served _____  ☐ Not Found _____
☐ Not Served _____  ☐ Other _____

DATE OF RETURN:

4/24/17

By: _____

Sheriff/or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____ _____, 20___. Signature of _____ Notary Public or _____ Deputy Clerk | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
| --- | --- |
| My Commission Expires: | |

<table>
<tr><td>

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to: Clerk & Master
        1 Public Square
        Suite 308
        Nashville TN 37201

Please state file number on list.

</td><td>

RECEIVED

APR 2 6 2017

Dav. Co. Chancery Court


ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

</td></tr>
</table>

## CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master By: _____ D.C. & M. |
| --- | --- |

# CASE SUMMARY
## CASE NO. 17-0368-III

| | | |
|---|---|---|
| **Belle Meade Title & Escrow Corporation vs. Fifth Third Bank et. al.** | §<br>§<br>§<br>§<br>§<br>§ | Case Type: **Other**<br>Subtype: **Damages**<br>Date Filed: **04/17/2017**<br>Location: **- Part III**<br>Judicial Officer: **Lyle, Ellen Hobbs** |

### PARTY INFORMATION

**Lead Attorneys**

**Defendant**   **Fifth Third Bank  an Ohio corporation**

**Defendant**   **Regions Bank  an Alabama corporation**

**Plaintiff**   **Belle Meade Title & Escrow Corporation**     **Donald Jay Serkin**
*Retained*
615-345-0244(W)

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

04/17/2017 **Complaint/Petition**
*Complaint with attached Exhibit A*
04/17/2017 **Summons - Service**
*Serve: Fifth Third Bank, an Ohio corporation, c/o Corporate Service Company, Registered Agent - Other (attorney) - Served 04/24/17*
04/17/2017 **Summons - Service**
*Serve: Regions Bank, an Alabama corporation, c/o Corporate Service Company, Registered Agent - Other (attorney) - Served 04/24/17*

**Unofficial Record**