**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BELLE MEADE TITLE & ESCROW CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:17-cv-00874** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **FIFTH THIRD BANK and REGIONS BANK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Plaintiff Belle Meade Title & Escrow Corporation ("Belle Meade Title") brings this action against defendants Fifth Third Bank and Regions Bank, seeking to recover approximately $116,000 that it lost in the course of an apparently fraudulent check-floating/wire-transfer scheme. Now before the court is defendant Regions Bank's Motion to Dismiss (Doc. No. 11). For the reasons stated herein, Regions Bank's motion will be granted and the claims against it dismissed with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations in the Complaint (Doc. No. 1-1), Belle Meade Title is a title company incorporated in Tennessee with its principal place of business in Nashville, Tennessee. It provides real estate closing services to clients all over the United States. It has a long-term banking relationship with defendant Fifth Third Bank. Fifth Third Bank is an Ohio corporation whose principle place of business is in Cincinnati, Ohio. Defendant Regions Bank, with which

the plaintiff does *not* have a banking relationship, is an Alabama corporation whose principal place of business is in Birmingham, Alabama.

In April 2016, Belle Meade Title was contacted by real estate agent Greg Seaton, who represented that his client, An Chang Al, wanted to purchase real estate in Nashville and requested Belle Meade Title's assistance in closing the real estate transaction. A few days later, on April 12, 2016, Belle Meade Title received a check in the amount of $399,496.49, dated April 8, 2016. The check was made out to Belle Meade Title and drawn on an account apparently held by the Royal Bank of Canada. (*See* Check Copy, Doc. No. 1-1, at 21.) Belle Meade Title deposited the check that day into its escrow account at Fifth Third Bank's Belle Meade branch.

Belle Meade Title, through its employees, apparently directed Fifth Third Bank to wire $130,000 to a Regions Bank account. However, it also informed Fifth Third Bank employee Rafeek Ghattas that any wire transfer to the Regions Bank account was contingent upon the funds in the check clearing at Royal Bank of Canada. Ghattas allegedly assured Belle Meade Title that he would watch the account and advise Belle Meade Title whether the check was "good" and when it cleared.

On April 21, 2016, Fifth Third Bank initiated a wire transfer of Belle Meade Title's funds in the amount of $130,000 to the client at a Regions Bank branch in Atlanta, Georgia, despite having been instructed not to wire funds until the Royal Bank of Canada check cleared and despite knowing that the Royal Bank of Canada check had not yet cleared. The plaintiff does not allege that Regions Bank was aware of any irregularity associated with the wire transfer.

On May 3, 2016, Fifth Third Bank received "notice of problems with the purported check." (Compl. ¶ 33.) On May 16, 2016, Royal Bank of Canada dishonored and returned the check to Fifth Third Bank. Fifth Third Bank did not immediately notify Belle Meade Title that

the check was counterfeit and had been dishonored. Instead, Regions Bank notified Belle Meade Title at some unspecified time.

As soon as the wire transfer of $130,000 was made to the Regions Bank in Atlanta, Georgia, Regions Bank's customer withdrew $116,000 of that amount. Belle Meade Title asserts "upon information and belief" that "all . . . of the wire transferred funds have been irretrievably lost except for $14,000." (Compl. ¶ 40.)

On April 17, 2017, Belle Meade Title filed an action in the Chancery Court for Davidson County, Tennessee, naming both Fifth Third Bank and Regions Bank as defendants and asserting claims for negligence, negligent misrepresentation, fraudulent misrepresentation, negligent hiring/training, promissory estoppel, undertaking of special duty, breach of fiduciary duty (based on Fifth Third Bank's purported violation of 12 C.F.R. § 229.2), breach of customary practices of financial institutions (based on purported violations of the federal Patriot Act, Bank Secrecy Act, and Anti-Money Laundering Act, and "other federal regulations" (Compl. ¶¶ 102, 103)), and violations of Tenn. Code §§ 47-4-202 and 47-4A-202. Only two of the claims are directed against Regions Bank: the "negligent hiring, training, monitoring and supervision" claim (Count IV) and the "breach of customary practices of financial institutions" claim (Count VIII). Belle Meade Title seeks to recover the funds lost as a result of the dishonored check and the wire transfer ($116,000), as well as interest, attorney's fees, costs, and "disbursements." (Compl. ¶ 116.)

Regions Bank promptly removed the action to federal court on the basis of diversity jurisdiction and federal question jurisdiction. Fifth Third Bank consented to removal. (Doc. No. 1.) Fifth Third Bank filed an Answer to the Complaint, while defendant Regions Bank filed the Motion to Dismiss. (Doc. No. 11.) The plaintiff has filed a Response in opposition to the motion

(Doc. No. 18), and Regions Bank, with the court's permission, filed a Reply (Doc. No. 21). The motion has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

Regions Bank moves for dismissal as a matter of law on the grounds that (1) it owes no duty of care to Belle Meade Title, who is not a Regions Bank customer, and therefore cannot be liable to the plaintiff for negligent hiring, training, and supervision or for breach of customary

practices; and (2) the Complaint fails to allege any specific facts that would support either of the two claims asserted against it.

In response, Belle Meade Title offers a lengthy discourse on the elements of a cause of action for breach of contract under Tennessee law; the third-party-beneficiary theory of recovery; why its common-law causes of action are not preempted by the Uniform Commercial Code; and case law concerning a beneficiary bank's duty to promptly and reasonably process wire transfers. When it finally turns to Regions Bank's motion, the plaintiff simply restates the averments in Counts IV and VIII of its Complaint, argues that the cases relied upon by Regions Bank are distinguishable, discusses federal recordkeeping regulations and banks' obligation to maintain Currency Transaction Reports and Suspicious Activity Reports under the Bank Secrecy Act, and describes the circumstances behind the passage of the Patriot Act. It does not remotely address Regions Banks' assertions that it does not owe a duty to Belle Meade Title, a non-customer, or that the factual allegations in the Complaint fail to support a cause of action against the bank.

As Regions Bank points out, the facts as alleged by the plaintiff, which are presumed to be true for purposes of this motion, establish only that an "unknown fraudster" (Doc. No. 11-1, at 4) gave Belle Meade Title a counterfeit check in the amount of $399,496.49, which Belle Meade Title deposited into its escrow account at Fifth Third. Belle Meade Title instructed Fifth Third Bank to wire $130,000 to an account held by a Regions Bank customer, but not to initiate the wire transfer until it was sure the $399,496.49 check had cleared. Fifth Third Bank disregarded that instruction and wired the $130,000 without waiting to be sure the check was honored by the drawee bank. Regions Bank's customer immediately withdrew $116,000 of the $130,000. Because the check was later dishonored, Belle Meade Title has suffered a loss in the amount of $116,000 (apparently having been able to recover the $14,000 that was not immediately

withdrawn). As discussed in greater detail below, these factual allegations are patently insufficient to state a claim against Regions Bank for negligent hiring or breach of customary financial practices.

**A. Negligent Hiring**

To state a negligence claim under Tennessee law, the plaintiff must state facts that, if true, would establish "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005). "[T]he concept of duty has become an essential element in all negligence claims." *Id.* To prove a claim of negligent hiring or supervision under Tennessee law, a defendant must establish, "in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Doe v. Catholic Bishop of Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008).

As a matter of law, it appears clear that the plaintiff cannot establish the first element of any negligence claim—that Regions Bank owed a duty of care to Belle Meade Title—because Belle Meade Title was not a customer of Regions Bank. *See, e.g.*, *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 357 (6th Cir. 2014) ("The almost-universal law in this country is that banks owe a duty of care only to their own customers." (citations omitted)); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship." (collecting cases)). Although there appears to be no Tennessee case directly on point, this court concludes that Tennessee courts, if confronted directly with the question, would conclude that banks do not owe a duty of care to non-customers. *Accord Ahlan Wa Sahlan*

*Hospitality Co. v. United Citizens Bank of So. Ky., Inc.*, No. 2011-CA-001349-MR, 2013 WL 275636 (Ky. Ct. App. Jan. 25, 2013) ("The only circumstance where a duty could conceivably be construed to arise between a bank and a non-customer third party under existing Kentucky law would be where a fiduciary duty exists. A fiduciary duty only exists where there is a special relationship, and it is not a duty to be imposed lightly. Rather, a fiduciary duty is the highest order of duty imposed by law. No fiduciary duty is involved (or even alleged) in the case before us. . . . Creation of such a duty [owed by banks to non-customer third parties] appears to be a matter more properly left to the purview of the General Assembly." (internal quotation marks and citations omitted)). Dismissal of the negligence claim is warranted on this basis alone.

Further, however, even if Regions Bank did owe some duty to act reasonably under all the circumstances, the plaintiff has not alleged facts showing that Regions Bank breached any such obligation. The plaintiff does not allege facts suggesting that any Regions Bank employee knew or should have known that there was any irregularity in the wire transfer, that any employee knew or had reason to know that Fifth Third Bank had initiated the wire transfer prematurely, that Regions Bank employees mishandled the wire transfer in any manner, or that Regions Bank's acceptance of the transfer and its distribution of funds to its customer violated any statute or regulation. In short, there are no factual allegations suggesting carelessness or unreasonableness on the part of any Regions Bank employee, much less a lack of care in "hiring, training, monitoring and supervision" on the part of Regions Bank.

In sum, the Complaint fails to state a claim for negligence of any kind on the part of Regions Bank.

**B. Breach of Customary Financial Practices**

The second claim against Regions Bank is the apparently novel tort of "breach of

customary practices of financial institutions." (Compl. Count VIII.) In support of this claim, Belle Meade Title asserts that Regions Bank knew that Belle Meade Title was "placing its trust and confidence in the bank and was relying on the bank to follow customary practices of business transactions regarding fraud detection and consumer protection in connection with check deposits and wire-transfer procedures." (Compl. ¶ 101.) The plaintiff alleges that Regions Bank "owed a duty of scrupulous good faith, trust, confidence, candor, undivided loyalty and an obligation to act in the best interests of [Belle Meade Title] under the Patriot Act, Anti-Money Laundering Act (AML) and Bank Secrecy Act with regard to its undertakings regarding the wire transfers" and that Regions Bank breached its duty to adhere to the customary practices of financial institutions, to Belle Meade Title's detriment, "by wire-transferring funds from [Belle Meade Title's] escrow account that were proceeds of a crime." (Compl. ¶¶ 102, 103, 104.)

Numerous courts have held that the statutes upon which the plaintiff relies do not create a private right of action. *See, e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) ("[T]he Bank Secrecy Act does not create a private right of action."); *Grad v. Associated Bank, N.A.*, 801 N.W.2d 349 (Table), 2011 WL 2184335, at *5 (Wis. Ct. App. June 7, 2011) (citing *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 476 (7th Cir. 2005) (holding that the regulation requiring banks to notify Treasury Department of "any known or suspected Federal criminal violation," 12 C.F.R. § 21.11, does not create a private right of action for damages); *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326 (D. Conn. 2008) (holding that neither the Patriot Act nor the Bank Secrecy Act authorizes a private right of action)). Likewise, many courts have held that, because these statutes do not create a private right of action, they also do not create a common law duty of care. *See Grad*, 2011 WL 2184335, at *5 (citing *In re Agape Litigation*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) (restating the general rule that banks do not have a

duty to protect noncustomers from customers' intentional torts and further holding that, because the Bank Secrecy Act does not create a private right of action, it did not create a duty of care "predicated upon the statute's monitoring requirements"); *Marlin v. Moody Nat'l Bank, N.A.*, No. H-04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug.16, 2006) ("The obligation under [the Bank Secrecy Act] is to the government rather than some remote victim. The [bank's] obligation is not to roam through its customers looking for crooks and terrorists. By that act, banks do not become guarantors of the integrity of the deals of their customers. It does not create a private right of action and, therefore, does not establish a standard of care."), *aff'd*, 248 F. App'x 534 (5th Cir. 2007); *Armstrong v. Am. Pallet Leasing, Inc.*, 678 F. Supp. 2d 827, 875 (N.D. Iowa 2009) ("Because the Bank Secrecy Act does not permit a private right of action, it follows that it cannot be construed as giving rise to a duty of care flowing to plaintiffs in this case."); *Aiken v. Interglobal Mergers & Acquisitions*, No. 05 Civ. 5503(LAP), 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) (the court may not impose duty of care based on Bank Secrecy Act because it does not permit a private right of action).

This court likewise holds that the federal statutes and regulations upon which the plaintiff relies do not create a common law duty on the part of banks to non-customers. The plaintiff's claim fails on that basis. Moreover, even if they did create some duty, the plaintiff's very general and conclusory allegations do not include any specific facts showing exactly what duty Regions Bank owed to it or how the bank breached such a duty, nor does it identify the "customary practices of financial institutions" that Regions Bank failed to follow. Rather, the plaintiff's factual allegations establish only that Regions Bank accepted an ordinary wire transfer and disbursed those funds to its account holder. The Complaint does not suggest that Regions Bank had any reason to know, at the time of the transfer, that the funds were the proceeds of a crime or

that the wire transfer was in any way irregular.

The Complaint fails to state a claim for breach of customary financial practices, assuming such a tort exists.

## IV. CONCLUSION

The court will grant Regions Bank's Motion to Dismiss and dismiss all claims against it. An appropriate Order is filed herewith.

ENTER this 17th day of October 2017.

ALETA A. TRAUGER
United States District Judge